# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:19-cv-00260-MR

| | |
|---|---|
| S. SHANE SMITH, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JUSTIN LYTLE, )<br>)<br>Defendant. )<br>_____ ) | **ORDER** |

**THIS MATTER** comes before the Court on initial review of the Complaint. [Doc. 1]. Plaintiff is proceeding *in forma pauperis.* [Doc. 9].

**I.    BACKGROUND**

*Pro se* incarcerated Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Rutherford Correctional Institution. The Defendant is Rutherford C.I. Correctional Food Service Officer Justin Lytle.

Construing the Complaint liberally and accepting the allegations as true, Plaintiff is disabled, having been born without fingers and toes. He is serving a Class C life sentence with the possibility of parole. Plaintiff was assigned as an inventory clerk in Rutherford C.I.'s Food Services Department on March 5, 2019, making an incentive wage of $1.25 per day

for this skilled position. Lytle, who was Plaintiff's immediate supervisor, was relatively new to the position, whereas Plaintiff was experienced.

Lytle used his position to pressure Plaintiff to take on more work in order to decrease Lytle's own workload. If Plaintiff questioned Lytle about the tasks he assigned, Lytle became "belligerent, yelling, cussing, and sometimes throwing things such as clip boards, notebooks, or he would violently hit boxes of inventory items stored on shelves in the stockroom." [Doc. 1 at 17]. Lytle would go into "fits of rage" and tell Plaintiff how he had beaten people up when he got mad, had been removed from school because he beat another boy so badly he was hospitalized, and got into a fist fight with an inmate at another prison. [Id.]. Plaintiff felt physically threatened by Lytle and could not defend himself from physical attacks due to his disabilities. Lytle's stories, threats, and violent outbursts caused Plaintiff stress.

Lytle told Plaintiff several times that Sergeant Taylor is Lytle's brother[1] and "has [Lytle's] back." [Doc. 1 at 18]. This relationship made Plaintiff afraid that Plaintiff would suffer harassment and/or retaliation if he expressed his grievances about Lytle.

---

[1] Plaintiff claims that Taylor is actually Lytle's brother-in-law. [Doc. 1 at 18].

Assistant Superintendent Larry Godwin came to the kitchen commissary on May 21, 2019 at which time Plaintiff expressed his grievances to Godwin while Lytle was present. Godwin made some changes to Plaintiff's and Lytle's job functions. After Godwin left, Lytle was irate and said that Plaintiff should keep his mouth shut and that things were going to stay the same despite Godwin's directives.

On the morning of May 23, 2019, Lytle gave Plaintiff a handwritten list of items to transfer from the freezer to the cooler. Lytle verbally abused Plaintiff and told Plaintiff that he was going to "show" Plaintiff and said "[y]ou'll see, you'll see." [Doc. 1 at 19]. After Plaintiff finished making the freezer transfers, he documented them in the daily worksheet, inventory balance report, and form for computer entry. About an hour after Lytle's shift ended that day, Plaintiff was called to Sergeant Taylor's office where Plaintiff was told that Lytle cited Plaintiff for a disciplinary infraction for disobeying a direct order to transfer food. Plaintiff was told that, upon a finding of guilt, he would lose privileges, be placed in solitary confinement for 20 days, and lose valuable sentence reduction credits.

The investigating officer permitted Plaintiff to make a statement and request evidence. The investigation showed that Lytle's allegations were untruthful, and the disciplinary infraction was dismissed. However, the

3

disciplinary charge "remains a part of [Plaintiff's] permanent prison record and reflects poorly on [Plaintiff's] conduct evaluations. [Doc. 1 at 20].

Lytle filed the false disciplinary report in retaliation for Plaintiff's grievances and Plaintiff has suffered as a result of the false report. The false disciplinary report made Plaintiff ineligible for a promotion from Min-1 to Min-2 security level, which would have made Plaintiff eligible for privileges. The false disciplinary report also affected Plaintiff's ability to participate in the North Caroline Mutual Agreement Parole Plan ("MAPP"), which requires a prisoner to remain infraction-free and is Plaintiff's only path towards returning to society. Lytle was aware of Plaintiff's desire to be promoted to Min-2 and participate in MAPP, and that a disciplinary infraction would "derail [Plaintiff's] freedom." [Doc. 1 at 21]. Plaintiff was reassigned from the kitchen to a non-skilled labor position as a result of the disciplinary citation for which Plaintiff earns only $0.70 per day.

Plaintiff seeks a declaratory judgment, nominal damages, any additional appropriate relief, and a jury trial. [Doc. 1 at 23].

Plaintiff has attached to his Complaint the grievances and grievance responses addressing Lytle's alleged retaliation. [Doc. 1-2 at 1-10]. The prison's responses and the grievance examiner's findings indicate that Plaintiff was not denied the Min-2 security level promotion due to Lytle's

4

disciplinary charge, that Plaintiff would not become eligible for parole until 2020, and that Plaintiff was not removed from his kitchen job, but rather, that Plaintiff requested a different placement because he indicated that he could not work with the Food Services Officer. [Doc. 1-2 at 8-10].

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis,* the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring screening and dismissal of a prisoner's complaint, or any portion of it, as frivolous or for seeking monetary relief from an immune defendant). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A *pro se* complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); see Ashcroft v. Iqbal, 556 U.S. 662,

5

129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). A plaintiff must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676 (4th Cir. 2000). In order to state a colorable retaliation claim under

§ 1983, a plaintiff must allege: "(1) … he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and the defendant['s] conduct." Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 499 (4th Cir. 2005)). Such claims are treated with skepticism in the prison context because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff has satisfied the first prong of the retaliation test by alleging that he engaged in protected First Amendment activity. "The First Amendment protects the right 'to petition the Government for a redress of grievances,'" Kirby v. City of Elizabeth City, 388 F.3d 440, 448 (4th Cir. 2004) (quoting U.S. Const. Amend. I), and the Supreme Court has recognized that prisoners retain this constitutional right while they are incarcerated, Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Although inmates have no constitutional entitlement or due process interest in access to a prison grievance procedure, Adams, 40 F.3d at 75, prison officials are precluded from retaliating against prisoners for engaging in such a grievance

7

procedure, Booker v. S.C. Dep't of Corr., 855 F.3d 533 (4th Cir. 2017) (finding that the right to file a prison grievance free from retaliation was clearly established under the First Amendment). Prison officials are also precluded from retaliating based on a prisoner's verbal complaints. See Booker, 855 F.3d at 542 (noting that Daye v. Rubenstein, 417 Fed. Appx. 317, 319 (4th Cir. 2011), misconstrued Adams as precluding an inmate from bringing a First Amendment claim alleging retaliation in response to a prisoner's verbal complaints to prison officials). Plaintiff alleges that his verbal complaint about Lytle's conduct to the Assistant Superintendent was protected First Amendment activity. This allegation satisfies the first prong of the retaliation test.

Second, Plaintiff has adequately alleged that Defendant's actions adversely affected Plaintiff's First Amendment rights. For purposes of a First Amendment retaliation claim under § 1983, a plaintiff suffers adverse action "if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from exercise of First Amendment rights." Constantine, 411 F.3d at 500 (quoting Washington v. Cnty. of Rockland, 373 F.3d 310, 320 (2d Cir. 2004)). A plaintiff's "actual response to the retaliatory conduct" is not dispositive. Id. Plaintiff alleges that Defendant Lytle initiated false disciplinary charges against him for complaining about Lytle to an assistant

superintendent. The initiation of false disciplinary proceedings could deter a person of ordinary firmness from exercising his First Amendment rights. See Booker, 583 Fed. Appx. at 44 (concluding that the filing of a false disciplinary charge unsupported by any evidence warranting that charge "would likely deter prisoners of ordinary firmness from exercising their First Amendment rights"). Accordingly, Plaintiff has adequately alleged that Defendant took adverse action by initiating false disciplinary proceedings against him.

Third, Plaintiff has adequately alleged a causal connection between his speech and Lytle's adverse conduct. A plaintiff satisfies the causation prong by alleging that the defendant's retaliatory act "was taken in response to the exercise of a constitutionally protected right." Adams, 40 F.3d at 75. Plaintiff alleges that Lytle initiated false disciplinary proceedings against him two days after Plaintiff complained about Lytle to an assistant superintendent and that Lytle took this action after telling Plaintiff he should have kept his mouth shut and that Lytle was going to "show" Plaintiff. [Doc. 1 at 18-19]. These allegations adequately connect Lytle's alleged act of reprisal to Plaintiff's protected activity. See Martin, 858 F.3d at 239 (plaintiff's allegation that defendant placed him in segregation after he filed a grievance against a prison sergeant as an act of reprisal alleged a sufficient connection between defendant's retaliatory actions and plaintiff's protected activity).

9

Finally, the Court will briefly address the grievance responses that Plaintiff has attached to his Complaint. These documents are properly before the Court. See Fed. R. Civ. P. 10(c) ("… A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). In the context of a civil rights complaint, the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation omitted). Nor must the court "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Id.; see Fayetteville Investors v. Comm'l Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails"). The grievance documents attached to the Complaint conflict with Plaintiff's allegations about the effect that Lytle's alleged retaliation had on Plaintiff's security level, eligibility for parole, and prison job placement. However, these matters do not undermine the facial sufficiency of Plaintiff's retaliation claim for purposes of initial review.

Plaintiff has stated a facially sufficient claim of retaliation and it will therefore be permitted to pass initial review. See, e.g., Martin, 858 F.3d at 239.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's retaliation claim against Defendant Lytle passes initial review. Accordingly, the Court will instruct the Clerk of Court to commence the procedure for waiver of service with respect to Defendant Justin Lytle.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Complaint [Doc. 1] passes initial review on Plaintiff's claim of retaliation against Defendant Lytle pursuant to 28 U.S.C. § 1915. The Clerk is instructed to mail Plaintiff a Notice and Response form pursuant to Standing Order 3:19-mc-60.

**IT IS FURTHER ORDERED** that the Clerk shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Justin Lytle, who is alleged to be a current or former employee of NCDPS.

**IT IS SO ORDERED.**

Signed: May 20, 2020

Martin Reidinger
United States District Judge