**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:19-cv-00260-MR**

| | | |
|---|---|---|
| **S. SHANE SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **JUSTIN LYTLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Defendant's Motion for Reconsideration of DE-69.  [Doc. 71].

The instant civil rights case is presently scheduled for a jury trial commencing on Tuesday, March 15, 2022 at 9:00 a.m. [See Doc. 67].  The Court recently addressed the *pro se* incarcerated Plaintiff's request for accommodations for trial, ordering, among other things, that Plaintiff be allowed to bring a non-networked laptop to trial to accommodate his need for note taking, that Plaintiff's confiscated USB flash drives be returned to him, and that Plaintiff be allowed to order special rubber grip pens.[1]  [Docs. 67, 69].

_____

[1] Plaintiff was born without fingers and toes.

Defendant now moves the Court to reconsider its Order pursuant to Rule 54 of the Federal Rules of Civil Procedure. [Doc. 71]. Defendant asks the Court to essentially reverse its Order requiring that the Warden at Foothills Correctional Institution ("Foothills") return Plaintiff's flash drives and allow Plaintiff to order the pens he needs.[2] [See Docs. 71, 72]. As grounds, Defendant states that he was not given the opportunity to respond to Plaintiff's motion for these accommodations and that legitimate penological interests warrant alternative solutions to Plaintiff's requests.[3] [Doc. 72]. Defendant includes with his motion the Declaration of Teresa Jordan, the Foothills Warden. [Doc. 72-1].

Jordan attests that Plaintiff was recently transferred to Foothills from Rutherford Correctional Center ("Rutherford") on May 26, 2021. Plaintiff brought his property with him from Rutherford, as well as a laptop that is designated for Plaintiff's use but is property of the North Carolina Department of Public Safety (NCDPS). [Id. at ¶ 4]. Plaintiff recently requested approval

---

[2] As ordered by the Court, the flash drives have been returned to Plaintiff and the special rubber grip pens have been ordered for him. Defendant, nonetheless, seeks the requested relief.

[3] Defense counsel, who the Court believes is relatively new to the North Carolina Attorney General's office, is advised merely for edification purposes that the Court often rules on non-dispositive motions filed by prisoner's in cases brought under 42 U.S.C. § 1983 before the time to respond expires. In the Court's experience, responses to such motions are not often filed. Moreover, in some cases, as here, there are time pressures that require more immediate disposition.

to use his laptop for the upcoming trial in this matter. [Id. at ¶ 7]. To prepare Plaintiff's laptop for use outside the prison, the NCDPS had an IT technician evaluate the laptop. The technician determined it was in good working condition. [Id. at ¶ 8]. The technician also inventoried the laptop and accessories, including the laptop bag and power cord, and found three flash drives in the laptop bag. [Id. at ¶ 9]. Foothills had been unaware that Plaintiff possessed these flash drives and learned that Rutherford had designated the flash drives for Plaintiff's use. [Id. at ¶ 10]. Offenders at Foothills are not allowed to maintain digital copies of documents, including legal documents, due to security risks. [Id. at ¶ 13]. For instance, flash drives of unknown origin could contain contraband information, including prison schematics, details of prison operations, home address and contact information of prison staff, pornography, documents communicating gang messages, and directives to and from other inmates. [Id. at ¶ 11]. Because of these risk, Plaintiff's flash drives were confiscated. [Id. at ¶ 14]. Before the flash drives were confiscated, however, Plaintiff was allowed to print copies of documents that were stored on the flash drives. Plaintiff was also given the chance to save his documents to the laptop's hard drive. Moreover, Plaintiff can print and maintain hard copies of his documents to the same extent as all other inmates in any event. [Id. at ¶ 15].

Defendant asks that the Court reverse its Order requiring the Warden to return the flash drives to Plaintiff but does not suggest any specific alternative. It appears, however, based on Warden Jordan's testimony, that Plaintiff's needs can be adequately accommodated by allowing Plaintiff to print and maintain hard copies of all documents stored on his laptop computer, which he is apparently already allowed to do. The Court understands that there is some relatively small risk that Plaintiff's laptop might crash after he has created and saved a document to his hard drive and before he is able to print a hard copy of that document. This small risk is outweighed by the legitimate penological interests outlined by Warden Jordan in preventing inmates from possessing flash drives that could store potentially dangerous contraband materials. The Court, therefore, will order that the Warden may again take possession of the returned flash drives, but also must allow Plaintiff to regularly print newly created or modified documents stored on his laptop, provided that the Warden provides a means by which the Plaintiff can back up such files to an external device and that the Defendant and Defense counsel have no access to such external device.

Turning to the pens, Jordan attests that the pens selected by Plaintiff were assessed as a security risk. [Doc. 72-1 at ¶ 16]. The pens are designed in a manner to allow the storage of small amounts of suboxone, a drug

frequently smuggled into prisons in the form of small pieces of paper, typically orange in color. The smuggling of suboxone is a constant concern for prison staff and generally allowing prisoners to order their own office supplies would present "an enormous security risk." [Id. at ¶ 21]. Thus, to accommodate Plaintiff's need for rubber gripped pens while still maintaining the security of the facility, Foothills staff researched and located rubber grips that can be applied to things like pens and toothbrushes. These grips are clear and adhesive, so the risk of their use to conceal drugs is reduced. [Id. at ¶ 22]. Given these considerations and the thoughtfully proposed alternative, the Court will modify its previous Order and, instead, order the Warden at Foothills to provide Plaintiff with the rubber grips identified in paragraph 22 of Jordan's Declaration.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion [Doc. 71] is **GRANTED** consistent with the terms of this Order and the Court's previous Order [Doc. 69] is **MODIFIED** accordingly.

**IT IS FURTHER ORDERED** that the Warden at Foothills Correctional Institution:

(1)     may take possession of the subject flash drives from Plaintiff in accordance with the terms of this Order;

5

(2)    shall provide the Plaintiff with at least three (3) rubber grips as identified in paragraph 22 of Docket No. 72-1; and

(3)    shall regularly allow Plaintiff to print and maintain hard copies of newly modified and created documents stored on his laptop computer and to provide for means of back up of such files as set forth herein until the termination of this action.

The Clerk's Office is respectfully directed to send a copy of this Order to all parties and to the Warden of the Foothills Correctional Institution, 5150 Western Avenue, Morganton, NC 28655.

**IT IS SO ORDERED**.

Signed: February 9, 2022

Martin Reidinger
Chief United States District Judge